UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JENNY REBECCA MARRESE,

                Plaintiff,

                                              **DECISION & ORDER**
v.                                                  15-CV-6369

CAROLYN W. COLVIN,

                Defendant.
_____

## Preliminary Statement

Plaintiff Jenny Marrese brings this action pursuant to Title II of the Social Security Act seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits. See Complaint (Docket # 1). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. See Docket ## 9, 15. On June 23, 2016, a hearing was held and argument was heard from counsel on the motions. At the conclusion of the hearing, the Court made an oral ruling on the record, finding that the ALJ failed to adequately follow and apply the "treating physician rule" to plaintiff's disability application. For the reasons stated on the record and below, it is hereby **ORDERED** that the Commissioner's motion for judgment on

1

the pleadings (Docket # 15) is **denied** and plaintiff's motion for judgment on the pleadings (Docket # 9) is **granted in part**.

## Discussion

Plaintiff's primary challenge to the ALJ's decision is that the ALJ did not give the proper weight to the medical findings and opinions of plaintiff's treating medical professionals. See Plaintiff's Memorandum of Law (Docket # 9-1). I agree that the ALJ improperly applied the "treating physician rule." Rather than affording three treating physician opinions controlling weight, the ALJ discounted them for the opinions of a consultative examiner and a non-treating, non-consulting doctor. Because the ALJ failed to adequately explain why she discounted the opinions of treating doctors in favor of non-treating professionals, the ALJ's decision was not based on substantial evidence and remand for further proceedings is required.

The Treating Physician Rule: The treating physician rule, set forth in the Commissioner's own regulations, "mandates that the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000). See 20 C.F.R. § 416.927(d)(2)("Generally, we give more weight to opinions from

your treating sources."). Where, as here, an ALJ gives a treating physician opinion something less than "controlling weight," she must provide good reasons for doing so. Our circuit has consistently instructed that the failure to provide good reasons for not crediting the opinion of a plaintiff's treating physician is a ground for remand. See Schaal v. Apfel, 134 F.3d 496, 503-05 (2d Cir. 1998); see also Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003)("The SSA recognizes a "treating physician" rule of deference to the views of the physician who has engaged in the primary treatment of the claimant."); Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004)(per curiam)("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician['s] opinion and we will continue remanding when we encounter opinions from ALJs that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.").

Our circuit has also been blunt on what an ALJ must do when deciding not to give controlling weight to a treating physician:

> To override the opinion of the treating physician, we have held that the ALJ must explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist. After

3

> considering the above factors, the ALJ <u>must comprehensively set forth his reasons</u> for the weight assigned to a treating physician's opinion. The failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand. The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion.

<u>Greek v. Colvin</u>, 802 F.3d 370, 375 (2d Cir. 2015)(emphasis added)(internal citations, quotations and alterations omitted).

Plaintiff had three treating source opinions on the record stating that she would not be able to participate in full time, competitive employment, and all three opinions concluded that she would be absent from work more than four days per month due to her symptoms. The first opinion came from Dr. Valerie Newman, plaintiff's long-time treating physician, who had seen plaintiff over forty times between 2008 and the date of her report. Dr. Newman completed a physical residual functional capacity questionnaire on May 25, 2012, indicating that plaintiff "can't function a normal life due to mental illness," was "incapable of low stress jobs," could not engage in full-time competitive employment on a sustained basis due to PTSD, bipolar, and anxiety, and would be likely absent from work more than four days per month due to her impairments or treatments. AR. at 680-85. Filling out the same form one month later on June 12, 2012, plaintiff's mental-health treating Nurse

4

Practitioner (NP)[1] Lyn Sullivan opined that plaintiff would be absent from work at least four days per month and would not be able to engage in full-time competitive employment. AR. at 692. One year later, NP Sullivan's opinion remained the same in an opinion co-signed by Dr. Michael Simson.[2] AR. at 937. The ALJ

---

[1] Ms. Sullivan is a nurse practitioner, not a medical doctor, and she is thus not an "acceptable medical source" as defined in 20 C. F. R. § 404.1513(a). However, as SSR-06-03P notes, "[w]ith the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources,'" such as nurse practitioners, "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists." SSR 06-03P, 2006 WL 2329939, at *2 (SSA Aug. 9, 2006). Opinions from these medical sources, although "not technically deemed 'acceptable medical sources' under [the] rules, are important and should be evaluated on <u>key issues such as impairment severity and functional effects</u>, along with the other relevant evidence in the file." Id. (emphasis added). Indeed, SSR 06-03p provides that an opinion from a "non-medical source" who, like NP Sullivan, has seen the claimant in a "professional capacity may, under certain circumstances, properly be determined to outweigh the opinion from a medical source, including a treating source," such as when "the 'non-medical source' has seen the individual more often and has greater knowledge of the individual's functioning over time and if the 'non-medical source's' opinion has better supporting evidence and is more consistent with the evidence as a whole." Id. at *6. Here, NP Sullivan has seen plaintiff for mental health treatment at least dating back to 2010, and thus has unique knowledge of plaintiff's functioning regardless of her credentialing.

[2] Dr. Simson never examined plaintiff. I read his co-signature of NP Sullivan's opinion as providing it additional weight. Cf. Beckers v. Colvin, 38 F. Supp. 3d 362 (W.D.N.Y. 2014) ("[R]eports co-signed by a treating physician may be evaluated as having been the treating physician's opinion.") (citations omitted); Keith v. Astrue, 553 F. Supp. 2d 291, 301 (W.D.N.Y.

5

assigned the relevant portions of each of these three opinions "little," "limited," and "less" weight, stating that the record did not support such limitations. AR. at 19, 22, 23.

In place of these three opinions, the ALJ apparently afforded more weight to the opinions of Dr. V. Reddy, a reviewing doctor who never met, examined or personally assessed the plaintiff, and Dr. Yu-Ying Lin, a consultative examiner who met the plaintiff only once. AR. at 21. Dr. Reddy performed a psychiatric review and mental residual functional capacity assessment of plaintiff's record on March 9, 2012. AR. at 645-62. Based only on a record review, Dr. Reddy opined that plaintiff would be able to fulfill the requirements of unskilled work in a low-contact, low-stress environment. AR. at 661. Psychological consultative examiner Dr. Lin met with plaintiff on March 6, 2012, and opined that plaintiff could maintain a "regular schedule." AR. at 642. While the ALJ gave "some weight" to Dr. Lin's report, it must be noted that in the same report, Dr. Lin also opined that the results of her examination "appear to be consistent with psychiatric problems <u>and this may significantly interfere with the claimant's ability to function on a daily basis</u>." AR. at 643. (emphasis added).

---

2008) (directing that the ALJ evaluate treatment notes drafted by a nurse practitioner and co-signed by a physician in accordance with the treating physician rule on remand).

Counsel for the Commissioner argued in her brief and at oral argument that it is the ALJ's duty to weigh the evidence in making her decision, and that the ALJ is not bound by any single medical or non-medical opinion. See Commissioner's Memorandum (Docket # 15-1) at 17; see also 20 C.F.R. § 404.1520b(c); Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002). Of course, this is correct as a general rule. It is the ALJ's job to weigh evidence and resolve conflicts. The ALJ may, in reconciling conflicting evidence, reject portions of a medical opinion and accept other portions of the same opinion. See Veino, 312 F.3d at 588. The ALJ is not free, however, to denigrate the medical findings and opinions of treating doctors and professionals in favor of one doctor who never met the plaintiff, and one doctor who met her only once, without a more comprehensive explanation than the one given here.

Contrary to the ALJ and the Commissioner's assertion, the record is replete with evidence suggesting that plaintiff has serious psychological limitations that would preclude her from full time employment in a competitive environment. Dr. Valerie Newman, plaintiff's long-term treating physician, routinely notes plaintiff's anxious and fearful thoughts, depressed mood

and difficulty functioning.[3]  See, e.g., AR. at 592, 599, 601, 609, 779, 785.  Dr. Newman notes that plaintiff was "down to 2 panic attacks daily."  AR. at 779.  Plaintiff reported to Dr. Newman and at the hearing before the ALJ that she stays in bed most of the time due to depression.  AR. at 50, 52, 58, 835.  Dr. Newman's assessment limited plaintiff's ability to engage socially or function in high stress settings.  AR. at 870.  Elsewhere on the record plaintiff discusses suicide attempts and suicidal ideation, AR. at 47, 420, and difficulty sleeping.  AR. at 419, 714, 757, 886.

Plaintiff's testimony to the ALJ reveals a woman who has difficulty getting out of bed, caring for her family and personal hygiene, and performing minor tasks of daily living.  She said that she sees her "psychiatrist once a week, so [she] make[s] sure [she] get[s] out of bed on Wednesdays."  AR. at 50.

---

[3] Counsel for the Commissioner seemed to set forth a brief argument that Dr. Newman's opinion regarding plaintiff's mental health determinations should be afforded less weight because she was not a mental health specialist.  See Commissioner's Memorandum (Docket # 15-1) at 23-24.  At oral argument, counsel acknowledged that under the regulations and the law a general physician may opine on a claimant's physical as well as mental health.  See Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) ("While the medical profession has standards which purport to restrict the practice of psychiatry to physicians who have completed residency training programs in psychiatry, it is well established that primary care physicians (those in family or general practice) identify and treat the majority of Americans' psychiatric disorders.").

Otherwise, she stays in bed three or four days a week. Id. She goes for three days without a shower because she cannot get up to get in the shower. AR. at 52. She opens her bedroom door so that her daughter can come in and talk to her. Id. She has small panic attacks three or four times a week, and during the relevant period she was hospitalized for a week due to a panic attack. AR. at 58.

In sum, the record here pays tribute to a woman with significant mental health issues that would severely impact her ability to sustain full time, competitive employment. She has provided three separate opinions from treating professionals documenting her psychiatric limitations and confirming that due to her mental health diagnosis she would be absent from work at least four days a month. The ALJ failed to articulate good reasons why these findings and opinions are entitled to less weight than the opinions of non-treating and non-examining doctors. Accordingly, remand is required.

## Conclusion

For the reasons stated on the record and discussed above, this Court finds that the ALJ did not appropriately apply the treating physician rule when assigning weight to the medical opinions of record. Therefore, plaintiff's motion for judgment

on the pleadings (Docket # 9) is **granted**, and the Commissioner's motion for judgment on the pleadings (Docket # 15) is **denied** only insofar as this matter is remanded back to the Commissioner for further proceedings in accordance with this Decision and Order and the Court's Oral decision on the record.

**SO ORDERED.**

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated:    September 16, 2016
          Rochester, New York